Formatted for Electronic Distribution                                                                                                For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:

**MARK H. MACHIA,**  **Chapter 7 Case**
**Debtor.**  **# 06-10582**

_____

Filed & Entered
On Docket
01/25/07

*Appearances:*    *David W. Lynch, Esq.*            *Raymond J. Obuchowski, Esq.*
                  *Colchester, Vt.*                  *Bethel, Vt.*
                  *Counsel for Debtor*               *Chapter 7 Trustee*

**MEMORANDUM OF DECISION**
**GRANTING DEBTOR'S APPLICATION FOR A FEE WAIVER**
**AND OVERRULING TRUSTEE'S OBJECTION**

Once again this Court is called upon to define the parameters of the new fee waiver provision, 28 U.S.C. § 1930(f)(1), promulgated under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109-8, 119 Stat. 23 (2005). Applying the facts of this case to the factors that weigh in favor of or against granting fee waivers, outlined in previous decisions, the Court grants the Debtor's application for a fee waiver, and overrules the Trustee's objection to the application.

On December 13, 2006, the same day that Debtor Mark Machia (the "Debtor" or "Machia") filed his chapter 7 petition, he filed an application for waiver of the chapter 7 filing fee. (doc. # 4). In his application, he indicated that his monthly net income, after reasonable expenses, was $11.80, and that he had paid his bankruptcy attorney $400.00. (Id.) He attached copies of his bankruptcy schedules A, B, I, and J to provide further details of his economic situation. (Id.) A week later, the chapter 7 trustee filed an objection to the Debtor's application for a fee waiver. (doc. # 9). The trustee pointed out that, in his statement of financial affairs, the Debtor had listed $16,000 in income for 2006, of which $4,000 was attributable to earnings and $12,012.00 attributable to social security disability income, and that the Debtor had paid his attorney. Acknowledging that the Debtor's schedules I and J reflected a net monthly income of $11.80, the trustee posited that the Debtor nevertheless might be able to pay the filing fee either in total or in installments. The trustee also contended that the Debtor failed to meet the first prong of the eligibility test for a waiver of the filing fee because, based upon the filed statement of financial affairs, the Debtor's income was not less than 150% of the official poverty line. (Id.)

The Debtor opposed the trustee's objection, countering that his only sources of income for 2006 were social security disability and a part-time department store job that he was forced to leave in November 2006 due to the continued deterioration of his health as a result of multiple sclerosis and other

health conditions. (doc. # 13). The Debtor stated that he would "not be able to resume work at any job for the foreseeable future." (Id.) He added that the disclosures on his means test affidavit and statement of financial affairs reflected his "trailing income" for the six months prior to his bankruptcy filing, and did not represent his current income. Machia argued that the test for the ability to pay the filing fee should be based on his current ability to pay in installments, not his past income, and that his schedules I and J showed that he did not have the ability to pay the filing fee in installments. He also stated that his mother had given him the funds to pay his counsel, and asserted that case law holds that payment of an attorney is not, in and of itself, reason to deny an application to waive the filing fee, citing In re Nuttall, 334 B.R. 921 (W.D.Mo. 2005). (Id.)

On January 16, 2007, the Court held a hearing on the Debtor's application and the trustee's objection. The Debtor testified, and was examined by his counsel and the trustee. Based upon that testimony, the Court makes the following findings of fact. Machia lives by himself. He spends $52 per month on cable TV and had already reduced the cable TV bill "as much as [he] could" but continues to purchase cable service as he does not have any television reception without cable. His mother, who lives in Richmond, Vermont, gave him the money to pay his attorney, but she does not help him with his other bills. Asked whether the $400 per month amount (listed on schedule J) that he spent on food was reasonable, he responded that it was and clarified that this figure included about $100 for cat food, toiletries, and cleaning supplies. He estimated that he spent between $400 and $500 last year on clothing and shoes. He has a $112 per month spend down for Medicaid which took effect January 1, and he has additional medical bills. Machia stated that taxes were withheld from his pay check, that he will file for a tax refund, but that he had "no idea" how much he would receive. In past years, he has received between $400 and $500 from state and federal income tax refunds. It is his intention to use any tax refund to repay his mother or to pay the Medicaid spend-down, as he was just recently released from the hospital and has significant medical bills.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

BAPCPA established a two-pronged test to determine eligibility for a waiver of the chapter 7 bankruptcy case filing fee:

> Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line [sic] . . . applicable to a family of the size involved and is unable to pay that fee in installments. . . .

2

28 U.S.C. § 1930(f)(1) (emphasis added). The Debtor bears the burden of proving by a preponderance of the evidence that his circumstances satisfy both requirements of the fee waiver provision. In re Burr, 344 B.R. 234, 236 (Bankr. W.D.N.Y. 2006); In re Nuttall, 334 BR 921, 923 (Bankr. W.D. Mo 2006). Thus, the Debtor must establish that his income is below 150% of the poverty line and that he is unable to pay the filing fee in installments. This Court has previously ruled that the determination of the Debtor's ability to pay is properly made by reference to the totality of the circumstances. In re Kauffman, __ B.R. __, 2006 WL 3017316, * 3 (Bankr. D.Vt. Oct. 24, 2006).

The Court finds Machia to be credible and relies upon his testimony as truthful and complete.

A.  *The First Prong of the Test: Is the Debtor's Income Less Than 150% of the Official Poverty Line?*

In order to qualify under the first prong of the fee waiver test, a Debtor must show that his income is less than 150 percent of the poverty guidelines last published by the United States Department of Health and Human Services (DHHS) applicable to a family of the size involved. According to the DHHS 2006 Poverty Level Guidelines, the poverty income for a family of one is $9,800. One hundred fifty percent of that guideline is $14,700. The trustee argues that the $16,000 income reported in Machia's statement of financial affairs should be the figure against which the Debtor's eligibility for a fee waiver is measured, and since that $16,000 figure is above $14,700, or 150% of the DHHS guideline, according to the trustee, Machia is not eligible for a fee waiver. The Debtor asserts that the figure in schedule I, which discloses his current income, is the more reasonable measure of what he can afford to pay.

The Interim Procedures regarding the chapter 7 fee waiver provisions of BAPCPA, promulgated by the Judicial Conference of the United States on August 11, 2005, provide definitive guidance on this question. The Interim Procedures state that "[t]he income for comparison to the poverty guidelines is the 'Total Combined Monthly Income' as reported (or as will be reported) on Line 16 of Schedule I. Non-cash governmental assistance (such as food stamps or housing subsidies) is not included." See Judicial Conference Interim Procedures, found at www.uscourts.gov/bankruptcycourts/jcusguidelines. Hence the Court overrules this aspect of the trustee's objection and will rely upon current income, as disclosed on schedule I, in assessing the first prong of the fee waiver test.

Line 16 of Machia's schedule I shows a monthly income of $1,001.30 which, multiplied by twelve months, yields an annual income of $12,015.60. This is less than 150% of the DHHS guideline of $14,700. Accordingly, Machia satisfies the first prong of the fee waiver test.

B.  *The Second Prong of the Test: Can the Debtor Pay the Fee in Full or in Installments?*

In In re Spisak, __ B.R. __, 2007 WL 96398 (Bankr.D.Vt. Jan. 12, 2007), this Court identified several factors that courts have applied to determine, based on the totality of the circumstances, whether a debtor is able to pay the filing fee in installments: (1) whether expenses exceed income; (2) whether there are any discrepancies between the debtor's application and schedules, culled from a review of the debtor's

3

testimony, schedules, statement of affairs, and other pleadings; (3) whether the debtor has any collateral sources of income from family or friends to pay the filing fee; (4) whether the debtor listed any unreasonable expenses that could be directed to pay the filing fee; (5) whether the debtor agreed to pay a portion of the attorney's fees after the filing of the case; and (6) whether the debtor has any exempt property that could be used to pay the filing fee and, if so, the value of that exempt property. See id. at *3 (citing cases). This Court stated that it would also consider the following factors in the totality of the circumstances analysis: the amount of debt being discharged, the debtor's historical allocation of net disposable income, and whether the debtor's current or anticipated expenses are the result of extraordinary circumstances. See id. at *4.

Here, the Debtor's income barely exceeds expenses. Fed. R. Bankr. P. 1006(b)(2) provides that, if a court grants leave to pay the filing fee in installments, "[t]he number of installments shall not exceed four, and the final installment shall be payable not later than 120 days after filing the petition." Machia has $11.80 per month available to pay the filing fee. Even if he paid four installments of $11.80 for four months (approximately 120 days), that amount would not be anywhere near sufficient to pay the $299 chapter 7 filing fee. Thus, although Machia's income does exceed expenses, it is not a sufficient sum to warrant having that factor weigh against granting the fee waiver. This result contrasts with the debtor in Spisak, who had $97.00 net income per month, and whose application of that amount to the filing fee could pay the fee over a 120 day period.[1]

During the hearing, the trustee elicited testimony from Machia that taxes had been taken out of his paycheck when he worked at his part-time job, and that the Debtor may be eligible to receive a 2006 income tax refund. The question arises whether the possibility of an income tax refund should, and to what extent, be considered in the totality of the circumstances assessment in this case.

In the context of deciding whether income tax refunds are property of the bankruptcy estate pursuant to 11 U.S.C. § 541, courts have long held that a debtor's contingent right to a tax refund if he files his bankruptcy petition during the tax year, is an asset of the bankruptcy estate. See In re DeVoe, 5 B.R. 618, 619 (S.D.Ohio 1980). The only caveat is the "portion of the debtor's tax refund attributable to pre-petition withholdings is such an interest in property and is part of the bankruptcy estate," while post-petition withholdings are considered the property of the debtor, who is entitled to "[a]ny amount properly claimed as exempt" under the Code. Id. In this case, Machia may have a tax refund; if so, it would comprise 347 days of withholdings before filing for bankruptcy and 18 days of withholdings after he filed on December 13, 2006. The estate would be entitled to 347/365ths of the refund, while Machia would be entitled to 18/365ths of the refund.

---

[1] Moreover, the result the Court reached in Spisak can be distinguished from the conclusion the Court reaches here because Machia met his burden of proof. In Spisak, however, questions of material fact remained unanswered after the hearing, which was a predominant basis for the Court's denial of the fee waiver in that case.

4

However, the question before the Court is not whether Machia's anticipated tax refund is property of the estate, but rather how much weight should be given to this factor in determining whether to grant his application for a waiver of the filing fee. In order to grant the application, the Court must find that the Debtor is unable to pay the filing fee. The record reveals no evidence upon which the Court can conclude that Machia will actually receive a refund, when he would receive it, or how much he would receive -- and hence it cannot determine whether any such refund would be sufficient to fund the payment of the filing fee in installments. Moreover, the tax return is not due to be filed until April 15, 2007, almost 120 days from the time that Machia filed his petition. There is no basis for the Court to compel Machia to file his return early in order for him to devote whatever refund he might receive toward his filing fee and, even if he did file early, the Court could not project when Machia would receive any refund to which he may be entitled. His situation is different from the one the Court encountered in In re Kauffman, 2006 WL 3017316, where the Debtor had amended her schedule B to show that she had actually received a Vermont property tax prebate in the amount of $1,415. Her property tax return had vested, and the sum was available to apply towards her filing fee. Here, the Court concludes that, under the facts of this case and particularly given the lack of certainty as to the availability or amount of any tax refund, the contingent tax refund is a neutral factor in the Court's analysis of the totality of circumstances.

The other factors listed above, to the extent applicable, all weigh in favor of granting the fee waiver. While Machia's mother gave him the money to pay a bankruptcy attorney, he testified that she does not help him with his other debts and therefore she cannot be considered a collateral source of income. Based upon the detailed testimony about the food and cable expenses, and a review of the other items listed on schedule J, the Court finds the Debtor's expenses are not unreasonable. As to the attorney's fees factor, the Debtor is correct that the payment of attorney's fees pre-petition does not disqualify a debtor from eligibility for a fee waiver, and the Debtor's filings indicate that he will not be paying any additional attorney's fees. He has no exempt property, and he seeks to discharge about $12,000 in debt, not an exorbitant sum, so these factors also weighs in favor of granting the application. Finally, the Debtor has just a minimal amount of net income above expenses and there was no evidence of any discrepancy or misstatement in the application, schedules, or statements the Debtor has filed with the Court that would warrant denial of the application.

Considering all of the above, the Court holds that the Debtor meets the first prong of the fee waiver test because his current income is the basis for that analysis and he currently earns less than 150% of the poverty line income. As to the second prong, the Debtor has carried his burden of proof by showing, through the totality of the circumstances, that the Debtor is unable to pay the filing fee in installments.

5

## CONCLUSION

Based upon the foregoing, the Debtor's application for a waiver of the chapter 7 filing fee is granted and the trustee's objection to the application is overruled.

This constitutes the Court's findings of fact and conclusions of law. A separate order shall issue granting the fee waiver.

January 25, 2007  
Rutland, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge